UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEALED MATTERS

(IN RE SEARCH OF 32900 FIVE MILE ROAD,
LIVONIA, MI, 48154

AND

IN RE SEARCH OF 102 E. GRAND RIVER
AVENUE, BRIGHTON, MI 48116)

Nos. 2:13-MC-50293
2:13-MC-50293-A

HON. NANCY G. EDMUNDS

## AFFIDAVIT OF WILLIAM ELIAS IN SUPPORT OF HIS MOTION TO UNSEAL AFFIDAVITS SUPPORTING THE SEARCH WARRANTS

William Elias, being first duly sworn, says that he makes this affidavit on behalf of himself in this action and in support of his Motion to unseal the search warrants in the above-captioned matter. He further states that the following facts set are within his personal knowledge and that he is not disqualified from being a witness, and if sworn as a witness, can testify competently to the following:

1. I, William Elias, am the sole owner of three entities targeted in the search executed pursuant to the two search warrants, Elias Real Estate LLC, Elias Financial LLC, and Taxfaster LLC.

2. On February 27, 2013, the FBI conducted raids against my businesses, Elias Realty LLC, Elias Financial LLC, and Taxfaster, LLC, in Brighton and Livonia, Michigan.

3. I was not permitted to be on the premises during the search and was not given the search warrants until after the raids were completed.

4. The government agents conducting the search turned off the security cameras in the businesses at both locations.

5. Because I was not permitted on the premises and my security cameras were turned off, I was not able to see what government agents actually took and am forced to rely on their vague and incomplete receipts, and my post-search inspection.

6. The reason that the FBI gave for not permitting my presence is "officer safety." Yet my businesses are real estate brokerages employing dozens of real estate brokers and agents. Additionally, the FBI detained certain employees on site for questioning, leaving me to wonder why they would not even allow me on site, yet feel it was necessary to detain my employees. Finally, none of the employees who were detained were searched for weapons—indicating that "officer safety" was not a primary concern for the government agents.

7. A post search inspection of the businesses revealed damage to furniture, my safe, and $3600 in missing cash that federal agents have not been able to account for. Agents have also seized client files that contained keys to clients' houses. Federal agents have not been able to account for the keys either.

8. When asked by Federal Agent David Capizola, who came to my home with another unidentified agent and asked me what the password was to my server, I gave it to him without hesitation and without delay.

9. When my attorney contacted me and asked for the combination to my safe to provide to the FBI, I provided it and went to the Livonia location to offer assistance to make sure nothing else was damaged. When I arrived, I was not allowed in the building. While on my cell phone with my attorney informing him they would not let me in, a Federal Agent offered to take my cell phone to Special Agent Claudia Link, the lead FBI agent, so that she could speak to him and explain why. As soon as I handed him my phone, I was informed the phone was being seized, yet I continued to cooperate and gave them the "lock code" to get into my cell phone

2

when they asked me for it. Had they let me inside the Livonia location, I would have prevented the damage to my furniture, computers, and my safe, as I would have provided keys and access.

10. Additionally, agents took a "Will Elias bobblehead" and a plaque honoring me with a framed Detroit Free Press article. They also removed a framed photo from my office. I have no idea how these items could reasonably relate to the scope of the search warrants. But I am unable to ascertain the basis for the search, as the affidavits setting forth probable cause remain sealed and inaccessible to me.

11. Federal agents seized a large amount of business property, including computer hard drives, flash drives, client files, and other documents. This seizure of business property has made it very difficult for me to provide services to my clients and has caused me severe reputational damage.

12. The FBI has not given me a firm deadline for when my businesses' property will be returned. I have now been without 50 plus boxes of office documents and materials, as well as without computer hard drives and equipment for over 33 days and counting—since February 27, 2013.

13. The receipts provided "listing" the seized property are vague and incomplete—with descriptions like "blue/red folder" and "misc documents" throughout. Each day I am finding out about more missing items that were never accounted for by the FBI—for example, on March 29, 2013, I was notified that a client file that the FBI had seized contained $2,250 worth of cashier's checks. The FBI did not account for the cashier's checks.

14. The raid was also widely reported on the local and national news, casting my businesses and me in a negative light. At least six local news organizations reported the raid: The Detroit Free Press, Channel 7 WXYZ (local ABC), CBSlocal.com, the Livingston Daily, The

3

Observer and Eccentric, and Myfoxdetroit.com, as well as Fox's national network. Because I do not know the basis for the FBI's raid and have not been charged with any wrongdoing, I can only speculate in response to the media scrutiny.

15. In fact, a Google search of "William Elias" on April 3, 2013 revealed stories about the FBI raid as 3 of the top 5 search results.

16. I also need to discover the basis for the FBI's raid to effectively mitigate harm to my business reputation, reassure clients and business contacts, and take other steps to protect his business interests that have been damaged by the negative publicity.

17. I also need to discover the basis for the FBI's raid to structure my own internal inquires and identify any unauthorized conduct by my employees that may have drawn FBI scrutiny.

18. I also need the information in the affidavits to investigate the potential for any related civil actions arising of the raid under either 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

19. I also need the information in the affidavits because it may lead to relevant and discoverable information related to my civil suit against Freddie Mac, *William Elias et al v. Freddie Mac*, 5:13-CV-10387-JCO-MAR. As part of its complaint to the Michigan Bureau of Licensing and Regulatory affairs against my businesses and me, investigator Kevin Pearson expressed Freddie Mac's intent that my companies and I should not be allowed to do business in Michigan any longer. The LARA complaint is dated November 28, 2012—which is more than 45 days after I had submitted a 324 response to Freddie Mac, categorically refuting each of the allegations. Yet investigator Pearson failed to disclose my response to LARA.

4

20. Investigator Pearson however disclosed that Freddie Mac made a complaint to the FBI regarding my businesses and me. I therefore believe, but cannot ascertain without accessing the affidavits, that Freddie Mac is the FBI's primary informer. Given that the FBI raid took place a month after I filed suit against Freddie Mac for among other things tortious interference, unfair competition, and defamation, accessing the affidavit would allow me to investigate whether the raid was part of Freddie Mac's retaliation against me. Further, given that investigator Pearson did not disclose exculpating circumstances and facts to LARA, it is more than reasonable for me to suspect that he did not fully disclose the exculpating information in Freddie Mac's possession to the FBI. Without access to the affidavit, I cannot investigate Freddie Mac's role and link between the civil suit and the FBI raid.

21. The basis for the search warrants is even more questionable in light of my demonstrated willingness to produce documents as requested and otherwise cooperate with any investigation when the requesting party has a right to request documents. When Freddie Mac invited me to respond to its October 1, 2012 allegations of misconduct as part of its Exclusionary List proceedings, I responded within 10 days with a 34-page comprehensive response, supported by 293 pages of supporting information. Responding to Freddie Mac's complaint to LARA, I produced over 1,000 pages of company documents as evidence that Freddie Mac's allegations were false.

22. Contemporaneously with the execution of the search warrants, I was served with a grand jury subpoena requesting the same documents outlined in the search warrants. I was never given a chance to produce these documents voluntarily, in a manner that would have minimized the negative impact to my business.

23. Besides the negative impact of the raids on my ability to do business and business reputation, the raids have had an impact on my personal life. Because of the widespread media attention, my wife and three children have suffered emotional distress and harm. Personally, I have been subjected to personal scorn and probing questions, to which I am unable to adequately respond because I do not know the basis for the FBI's investigation and raid that would presumably appear in the affidavit supporting the issuance of the search warrants.

_____
William Elias
Sole owner of Elias Real Estate LLC, Elias Financial LLC, and Taxfaster LLC

Subscribed and sworn to before me
this 4th day of **April, 2013**.

_____
**Leslie N. Wolfolk**, Notary Public
**Wayne** County, State of Michigan
My Commission Expires: **March 21, 2020**
Acting in **Wayne** County, State of Michigan



6