UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re Search of 32900 Five Mile Road,
Livonia, MI 48154,                                    Case No. 13-50293, 15-50512

and                                                   Honorable Nancy G. Edmunds

In re Search of 102 E. Grand River
Avenue, Brighton, MI 48116

_____/

In re Real Properties:

36695 Clarita, Livonia, MI,
17225 Lennane, Redford, MI,
9977 Hillcrest, Livonia, MI,
1188 Peavy Road, Howell, MI,
40760 Deer Pines Drive, Canton, MI, and
3937 Orchard Drive, Highland, MI

_____/

**OPINION AND ORDER DENYING MOVANT'S MOTION FOR RETURN OF
PROPERTY; GRANTING GOVERNMENT'S MOTION TO DISMISS; AND
GRANTING GOVERNMENT'S MOTION FOR A RESTRAINING ORDER**

This matter comes before the Court on three motions: (1) Movants William Elias,

Vicky Elias, Michigan Property Ventures LLC, and Michigan Real Estate Ventures LLC's

motion for return of property under Federal Rule of Criminal Procedure 41(g); the

Government's motion to dismiss Movant's Rule 41(g) motion; and (3) the Government's

motion for a restraining order. The Court held a hearing on these motions on June 10,

2015. For the reasons stated below, the Court DENIES Movant's motion for return of

property, GRANTS the Government's motion to dismiss, and GRANTS the Government's

motion for a restraining order. The restraining order will issue in a separate document.

## I.   Background

All three of the motions in this case arise out of the same factual circumstances. In January 2012, the FBI opened an investigation into Movant William Elias and others in connection with a scheme to defraud federally insured financial institutions through a short sale fraud scheme, also known as a "buy and bail." According to the Government:

> The scheme involved short sale transactions of real property which included a payment to a purported law firm by the name of Moody, Keegan, Nelson and Associates (sometimes referred to herein as "MKNA"); however, no such law firm was involved in the transaction and the payments to MKNA were obtained by fraud. The scheme can be summarized as follows:
>
> 1) Elias advertised to homeowners whose mortgages were underwater that Elias "has the ability [to] sell homes that no other real estate company can." In response to these advertisements, the homeowners would come into one of Elias's office locations seeking short sale assistance. Most homeowners included in the scheme were not delinquent in their existing mortgages at the time they contacted Elias for short sale assistance.
>
> 2) During the homeowners' visit to Elias Realty, Elias or one of his employees would advise the homeowners to purchase a new home prior to completing the short sale transaction. Elias or one of his employees would then direct the homeowners to apply for a residential loan to buy a new house through Gold Star Mortgage Financial Group, which was housed in the same building as Elias Realty and was affiliated with Elias Financial Group. The homeowners had to have satisfactory income and credit history to be eligible for approval for the Federal Housing Administration ("FHA") insured home loan.
>
> 3) The FHA mortgage insurance program is administered by the U.S. Department of Housing and Urban Development ("HUD"). FHA insured loans are more accessible to borrowers because they require smaller down payments than conventional loans. The debt-to-loan ratio requirement of the FHA-insured loan is also less strict than required by conventional lenders. These factors allowed the homeowners to qualify for the FHA-insured home loans while having an existing mortgage
>
> 4) On the paperwork to buy these second houses, Elias and his employees would intentionally make two false representations: (a) that the existing homes were worth substantially more than their actual market value; and (b) that the homeowners intended to keep their existing homes and rent them out. In

2

reality, the homes were worth significantly less than stated, and the homeowners had no intention of renting their homes; rather, they intended to sell them via short sale.

5) The purchase of the second home with the FHA-insured mortgage would be completed prior to the short sale because the homeowners' credit would be adversely affected by the intended short sale, which would inhibit them from being approved for a new home loan.

6) After securing the FHA-insured loans and purchasing the new homes, the homeowners were in a position where they owed two mortgage payments, thus creating a financial strain on the homeowners. At this point, Elias would assist the homeowners with unloading the original houses in short sales, hence the phrase, "buy and bail" scheme.

Elias and his companies received the following compensation as a result of the above scheme: an upfront fee, real estate commission for both the purchase and sale of the homeowner's properties, and a fee to the purported law firm of Moody, Keegan, Nelson and Associates.

(Gov.'s Mot. to Dismiss at 1-3.). On February 26, 2013, Magistrate Judge Whalen issued a search warrant for two of Movant William Elias's business locations for evidence showing violations of the federal mail fraud, wire fraud, and bank fraud statutes (18 U.S.C. §§ 1341, 1343, 1344). Through its investigation, the Government learned that proceeds from the scheme were eventually used to purchase six real properties.[1] Pursuant to Mich Comp. Laws § 565.451a, the Government recorded Affidavits of Interest ("Affidavits") on the properties, indicating that it had knowledge of facts that supported their potential forfeiture. As an example, the text of the Affidavit for the "Peavy Property" reads as follows:

AFFIDAVIT RELATING TO MATTER AFFECTING TITLE TO REALTY

* * *

---

[1] The six properties are: (1) 36695 Clarita, Livonia, MI; (2) 17225 Lennane, Redford, MI; (3) 9977 Hillcrest, Livonia, MI; (4) 1188 Peavy Road, Howell, MI; (5) 40760 Deer Pines Drive, Canton, MI; and (6) 3937 Orchard Drive, Highland, MI.

3

NOW COMES GJON JUNCAJ, an Assistant United States Attorney, for the Eastern District of Michigan, who being duly sworn, deposes and states that;

1) This affidavit is filed pursuant to MCL 565.451a which provides that:

> Sec. 1a. An affidavit stating facts relating to any of the following matters which may affect the title to real property in this state made by any person having knowledge of the facts or by any person competent to testify concerning such facts in open court, may be recorded in the office of the register of deeds of the county where the property is situated;
>
> (b) Knowledge of the happening of any condition or event which may terminate an estate or interest in real property.

2) In accordance with the provisions of the above statue, **NOTICE IS HEREBY GIVEN** that the United States of America is aware of certain fact(s), condition(s), and event(s), proscribed by 18 U.S.C. § 1343; 18 U.S.C. §§ 1956 and 1957 which may terminate an estate or interest in the real property located at **1188 Peavy, Howell, Michigan,** being more fully described as:

* * *

3) Federal forfeiture statutes 18 U.S.C. §§ 981(a)(1)(A) and (C) with 28 U.S.C. § 2461; and/or 18 U.S.C. §§ 982(a)(1) provide that any property involved in a transaction, or attempted transaction, or property that constitutes proceeds, whether direct or indirect, or property traceable thereto, in violation of 18 U.S.C. § 1343, 1344, and/or 1956 and 1957, or any property traceable to such property, shall be subject to forfeiture to the United States, and no property right shall exist in it. All right, title, and interest in such property vests in the United States upon the commission of the act(s) giving rise to forfeiture.

(Movs.' Mot., Ex. L.) The Government filed the first Affidavit on April 13, 2013. (*Id.*, Ex. M.)

Three more were filed on November 21, 2013. (*Id.*, Ex. H, I, J.) And the final two were filed

on January 9, 2014. (*Id.*, Ex. K, L.)

On January 14, 2014, Michigan Property Ventures LLC (also a Movant in this case),

filed a quiet title action against the Government for three of the six properties. The action

was heard by Judge Duggan. Michigan Property Ventures LLC complained that the

Affidavits clouded the title to the properties and rendered them unmarketable. It asked the

4

court to declare that the Affidavits were unauthorized under Michigan law and to remove them. In response to the quiet title action, the Government filed a motion to dismiss for lack of subject matter jurisdiction. On June 26, 2014, Judge Duggan granted this motion. *See Michigan Prop. Ventures, LLC v. United States*, No. 14-10215, 2014 WL 2895485 (E.D. Mich. June 26, 2014).

During a hearing held on the Government's motion to dismiss the quiet title action, the Government informed Judge Duggan that it could "reasonably assure" him that it would file a forfeiture action against the properties within one month and then would remove the Affidavits. However, the Government did not file a forfeiture action or remove the Affidavits. According to the Government, the reason it did not do so was because of an agreement it had reached with Movants' counsel. This agreement was communicated to Judge Duggan on July 10, 2014, and remained in place even after Movants later changed their counsel. (See Gov.'s Mot. at 10-12.)[2]

From July 2014 to March 2015, Movants and the Government had a number of discussions regarding the criminal investigation against Elias and the potential forfeiture action. This included the exchanging of discovery. However, these discussions eventually broke down. On March 9, 2015, Movants filed a motion for return of property under Rule 41(g). The Government responded to the motion and also filed a separate motion to dismiss. The Government later filed a motion for a restraining order on the six real

---

[2] The Court understands Movants' frustration with both the large lapse of time involved in this matter and the unsuccessful negotiations to resolve it. However, the statue of limitations has not yet run on the criminal statutes the Government alleges have been violated, so the Government is within its rights to pursue the indictment on this time line.

properties in a separate case pending a forfeiture action. These three motions are discussed below.

## II.   Analysis

### A.  Federal Rule of Civil Procedure 41(g) Motions

In their motion for return of property, Movants ask the Court: (1) to order the Government to remove the Affidavits of Interest recorded on their properties; and (2) to enter an order prohibiting the Government from instituting a forfeiture proceeding against the properties. They argue that the Government's actions have destroyed Elias's realty business and have effectively seized their properties without due process of law.

#### 1.  The Court Declines to Exercise Its Equitable Jurisdiction Over Movants' Request

In seeking the removal of the Affidavits of Interest, Movants rely on Federal Rule of Civil Procedure 41(g). Under this Rule:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Civ. P. 41(g). A party may bring a Rule 41(g) motion for the return of property prior to the filing of any criminal proceeding. *White Fabricating Co. v. United States*, 903 F.2d 404, 407-408 (6th Cir. 1990). However, a Rule 41(g) motion brought prior to a criminal proceeding is treated as an action in equity. *United States v. Search of Music City Mktg.*, Inc., 212 F.3d 920, 923 (6th Cir. 2000) (*Music City Mktg.*); *Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir. 1974) ("The theory articulated by most of the cases is that jurisdiction to

6

order suppression or return prior to the indictment exists not by virtue of any statute but rather derives from the inherent authority of the court over those who are its officers."). A district court's decision to exercise jurisdiction over such a motion is accordingly governed by equitable principles and should be exercised only with "caution and restraint." *$8,050.00 in U.S. Currency v. United States*, 307 F. Supp. 2d 922, 925 (N.D. Ohio 2004). *See also Guerra v. United States*, 645 F. Supp. 775, 778 (C.D. Cal. 1986) (equitable jurisdiction should be "exercised sparingly").

In deciding whether to exercise jurisdiction over a Rule 41(g) motion brought prior to criminal proceedings, courts consider the following factors:

> (1) whether the Government displayed a callous disregard for the constitutional rights of the movant; (2) whether the movant has an individual interest in and need for the property he wants returned; (3) whether the movant would be irreparably injured by denying return of the property; and (4) whether the movant has an adequate remedy at law for the redress of his grievance.

*Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993). *See also Music City Mktg.*, 212 F.3d at 923 (approving a district court's consideration of whether there was an adequate remedy at law and whether the movants would suffer irreparable harm in determining whether to exercise its jurisdiction to hear a Rule 41(g) motion); *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975).

As is stated below, the Court is granting the Government's motion for a restraining order on the six properties at issue in this case. For this reason, the Court declines to exercise its equitable jurisdiction over Movants' request. In the event that the restraining order lapses without any forfeiture proceeding brought by the Government, Movants are free to renew their request for removal of the Affidavits.

### 2.  The Court Will Not Enjoin the Government From Bringing a Forfeiture Action

In addition to asking for the removal of the Affidavits of Interest, Movants also ask the Court, on the basis of the Fourth Amendment exclusionary rule, to enjoin the Government from filing a forfeiture action against Movants' properties. The Court declines to do so. The exclusionary rule does apply to forfeiture proceedings. *One 1958 Plymouth Sedan v. Com. of Pa.*, 380 U.S. 693, 702 (1965). However, the fact that property has been illegally seized does not immunize it from forfeiture. *United States v. One (1) 1987 Mercury Marquis*, 909 F.2d 167, 169-70 (6th Cir. 1990) (holding that the fact that property was illegally seized did not preclude its forfeiture if the Government could prove forfeiture with "untainted evidence."). *See also United States v. Six Hundred Thirty-Nine Thousand Five Hundred & Fifty-Eight Dollars ($639,558) In U.S. Currency*, 955 F.2d 712, 715 (D.C. Cir. 1992) ("When illegally seized property is itself the 'defendant' in the forfeiture proceeding, it may not be relied upon to sustain a forfeiture, but it is not 'excluded' from the proceeding entirely. Such property may be offered into evidence for the limited purpose of establishing its existence, and the court's in rem jurisdiction over it."); *United States v. $37,780 In U.S. Currency*, 920 F.2d 159, 163 (2d Cir. 1990) ("[W]e hold that an illegal seizure of property does not immunize that property from forfeiture, that the property itself cannot be excluded from the forfeiture action, and that evidence obtained independent of the illegal seizure may be used in the forfeiture action."). The Court has not decided whether the Government's filing of Affidavits of Interest on Movants' properties constituted an illegal seizure. However, even if Movants' properties have been illegally seized, that would not prevent the Government from bringing a forfeiture action against them

8

### 3. Conclusion

For the foregoing reasons, Movants' motion for return of property is DENIED and the Government's motion to dismiss is GRANTED.

### B. Government's Motion for a Restraining Order

The Government has moved for a restraining order under 18 U.S.C. § 983(j)(1)(B) (the civil forfeiture statute) and 21 U.S.C. § 853(e)(1)(B) (the criminal forfeiture statute) against six of Movants' properties pending a forthcoming forfeiture action. The restraining order will restrain the owners of the properties from attempting to sell, transfer, encumber or alienate the properties, unless authorized by the Court. It will also prevent the owners from physically damaging the properties, as well as engaging in other actions that diminish their value. The six properties are:

(1) 36695 Clarita, Livonia, MI,
(2) 17225 Lennane, Redford, MI,
(3) 9977 Hillcrest, Livonia, MI,
(4) 1188 Peavy Road, Howell, MI,
(5) 40760 Deer Pines Drive, Canton, MI, and
(6) 3937 Orchard Drive, Highland, MI.

To grant a restraining order prior to the filing of a civil forfeiture complaint or a criminal indictment, both statutes require: (1) notice to persons appearing to have an interest in the property and the opportunity for a hearing; (2) a substantial probability that the United States will prevail on the issue of forfeiture; (3) that the failure to enter the order will result in the property being made unavailable for forfeiture; and (4) that the need to preserve the availability of the property outweighs the hardship of the order. 18 U.S.C. § 983(j)(1)(B); 21 U.S.C. § 853(e)(1)(B). A restraining order may be effective for no more than 90 days unless the Government shows good cause for an extension. *Id.*

9

The Government asserts that a substantial probability exists that Elias engaged in an illegal scheme to defraud financial institutions, that proceeds were generated from the scheme, and that those proceeds—along with funds commingled and laundered with those proceeds—were used to purchase the six real properties at issue in this case. Specifically, the Government asserts there is a substantial probability that the six real properties are the proceeds of wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and conspiracy to engage in wire fraud and bank fraud (18 U.S.C. § 1349); and that the properties were also involved in money laundering (18 U.S.C. §§ 1956, 1957). The Court agrees. Both parties submitted numerous documents to the Court concerning the factual basis of the Government's investigation of William Elias. These include, among other things, an affidavit from Elias, an affidavit from FBI Special Agent Claudia Link, financial documents, emails, and a transcript of an undercover conversation with Elias. The Court also held a hearing on the matter on June 10, 2015. Based on the arguments made at the hearing, the affidavits supplied by the parties, and the many other documents provided to the Court, the Court finds a substantial probability that Elias engaged in an illegal scheme to defraud financial institutions, that proceeds were generated from the scheme, and that those proceeds—along with funds commingled and laundered with those proceeds—were used to purchase the six real properties at issue in this case.

The Court further finds that the failure to enter a restraining order will result in the properties being made unavailable for forfeiture. The owners of the properties, as evidenced in their Rule 41(g) motion for return of property, have demonstrated their intention to sell or encumber the properties if not restrained. The restraining order is necessary to ensure that the properties will be available for forfeiture.

10

Finally, the Court finds that the need to preserve the properties outweighs the hardship of the order. If the properties are sold or encumbered, they will not be available for forfeiture. *See United States v. Monsanto*, 491 U.S. 600, 613 (1989) ("Permitting a defendant to use assets for his private purposes that, under this provision, will become the property of the United States if a conviction occurs cannot be sanctioned."). Furthermore, the sale of the properties may affect the potential availability of restitution for any victims of the scheme. The Court notes that the restraining order does not prevent the sale of the properties, but only requires that such sale be approved by the Court.

Accordingly, the Court finds that the requirements of 18 U.S.C. § 983(j)(1)(B) and 21 U.S.C. § 853(e)(1)(B) have been met and GRANTS the Government's motion for a restraining order. The restraining order shall remain in effect for **45 days** unless extended by the Court for good cause.[3] The restraining order shall issue in a separate document.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  June 15, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 15, 2015, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager

---

[3] The Court notes that the Government requested that the restraining order remain in effect for 90 days. However, given the substantial amount of time and resources that have already been invested in this case, the Court believes that 45 days is sufficient.

11